## Sterling License

*Everett A. Rosser*, for appellants.

*Peter P. Jurchak*, for Pennsylvania Liquor Control Board.

HOBAN, P. J., March 1, 1948.—Appellants have a retail dispenser's license issued under the Beverage License Law, for an eating place known as Swiss Cottage, which is a restaurant located at Rocky Glen Amusement Park, in Lackawanna County. The park itself is owned and operated by appellants.

On November 5, 1947, the Pennsylvania Liquor Control Board cited Benjamin and Mae Sterling for a violation of the Beverage License Law, the alleged violation being stated as follows:

1. On or about September 21, 1947, and on divers other occasions, you, your servants, agents or employes offered things of value as an inducement to purchase malt or brewed beverages."

A hearing was held on November 26, 1947, before Jesse Hyman, Esq., examiner for the Pennsylvania Liquor Control Board, and on January 13, 1948, the board filed its opinion. The opinion included the following finding:

"At the hearing on the citation, held on November 26, 1947, the evidence adduced establishes the following fact:

" 'On September 21, 1947, the licensees, their servants, agents or employes offered things of value as an inducement to purchase malt or brewed beverages.' "

The board then went on to state that this was the fourth citation issued against these licensees, naming the others as of January 4, 1940, January 29, 1943, and July 15, 1946, and after each citation a suspension for 30 days or more was ordered. The opinion then concludes with an order as follows:

"And now, January 13, 1948, for the foregoing reasons, the board suspends the retail dispenser's eating place license . . . for a period of ten (10) days. . . ."

An appeal was taken from this order and a hearing set for February 20, 1948, in this court. On the day of the hearing counsel for Pennsylvania Liquor Control Board and for appellants stipulated that the appeal should be submitted upon the record of the testimony taken before the examiner on November 26, 1947. The record of the testimony taken at that hearing was offered and no further evidence was introduced. Counsel were asked to submit briefs. A brief was submitted on behalf of counsel for appellant. Counsel for the

Liquor Control Board stated that he did not desire to submit any brief but would submit his case upon the record.

Upon examining the record of the testimony, the following facts appear:

On September 21, 1947, which was a Sunday, appellants, through an employe, called public relations counsel, arranged a gala day at Rocky Glen Park, to be called "Ben Sterling Day". This was the last day of the park season and the celebration was designed not only as a business getting device for the park, but, according to Sterling, as a gesture of appreciation to patrons for a successful season. Advertisements for the affair carried the following notation:

"Today is 'Ben Sterling Day' at Rocky Glen! . . . Awards will be given—Clip the coupon below—Fill it out—Bring it to Rocky Glen today!

"LIST OF AWARDS: Benj. Sterling, Jr., $50 cash; Mae Sterling, $50 cash; Roy Stauffer, 1 Bicycle; . . . Gibbons Brewery, 5 Cases Beer (delivered); . . . Standard Brewery, 5 Cases Tru-Age (delivered)."

The list of awards included, in addition to those set forth as an illustration, a number of articles and the names of various business firms purported to be donors or contributors of the articles. A coupon accompanied the advertisement, which was to be filled out with the name and address of the individual. Coupons were to be deposited in a barrel at Rocky Glen and the awards were to be made at 4:30 p.m. on September 21st. The winners had to be present at Rocky Glen in order to receive the award.

The affair proceeded according to routine and when it came to the drawing, the beer prizes were awarded as follows:

One to Sylvia Goginsky, a girl 15 years of age, and another to Charles Odgers, Jr., a young man 20 years of age. As these coupons containing the names of the winners were drawn, the winners had the opportunity of selecting their own prizes from those available. Miss

Goginsky was advised by her father, who was present with her, to select the beer award, and Odgers apparently made his own choice. No beer was physically awarded on Sunday, September 21st, but during the following week the winners of the beer awards were contacted by Thomas Brownlee, the employe who was managing the whole affair, and were asked to accept $10 in cash rather than the delivery of the beer. Both agreed. The Goginsky girl received her money, but at the time of the hearing Odgers had not yet been paid. It developed that Brownlee had advertised the affair and the list of awards without consulting the purported donors. Representatives of the Gibbons and Standard Brewing Companies disclaimed any gifts on their part to the enterprise, and Brownlee explained to the agents investigating the matter for the Liquor Control Board that the responsibility for the advertising was his alone and that the persons listed as contributing awards had not been consulted. Ben Sterling, one of the appellants, stated that he had approved the advertisement when presented to him by Mr. Brownlee, but had not carefully scrutinized it and paid no attention to the details of the awards.

Since the day was Sunday, no beer was sold at the Swiss Cottage, the licensed premises, on that day, nor is there any evidence that beer was sold, given away or delivered to any one at any other place in the park on that day.

The facts recited above do not prove as a matter of law or logic the alleged violations for which these licensees were cited. Admitting that the Sterlings were responsible for the actions of their employe, Brownlee, where is there any evidence that the distribution of these gifts to the persons assembled at the park on Sunday, September 21st, was in any way an inducement for anyone to purchase malt or brewed beverages, when no malt or brewed beverages were sold?

The direction of the examination of the witnesses at the hearing before Examiner Hyman seem to point

toward an implication of illegality in offering or giving away cases of beer as prizes. Whether this is an illegal act or not, it is not the one for which the licensees were cited, and apparently the manager of the enterprise discovered that there was some taint of illegality to his offer to deliver beer as awards and attempted to cure the matter by substituting cash and refusing to deliver the beer. If the delivery of cases of beer as awards or prizes under such circumstances is unlawful, the act was never completed and certainly ought not to be held the basis of a penalty against the licensee. But, as pointed out above, it is not this act, or anything alleged to be unlawful about it, which is given as the basis for the suspension. In our opinion, there is utterly no evidence to justify the finding of fact made by the board that the licensees, or their employes, offered things of value as an inducement to purchase malt beverages.

The curious language of the opinion of the board, including a finding that the licensees have heretofore violated the provisions of the Beverage License Law, leads one to the conclusion that the real reason for suspending the license was because it had been suspended several times in previous years. In the absence of facts to justify a finding of a present violation of the law, the previous suspensions are irrelevant. In any event they could have no bearing on the question as to whether the license should be suspended or revoked or not, whatever influence they might have upon the board in determining the length of a justified suspension.

Now, March 1, 1948, the appeal is sustained, and the order of the Pennsylvania Liquor Control Board, dated January 13, 1948, suspending the retail dispenser's eating place license no. E-3817, issued to Benjamin Sterling, Jr., and Mae Sterling, for the premises known as Swiss Cottage, in the Borough of Moosic, Lackawanna County, Pa., is reversed.